# Walker, Superintendent, *v.* J. B. McCrary Co.

### Assumpsit.

(Decided July 6, 1916. Rehearing denied December 30, 1916.
73 South. 342.)

**Banks and Banking; Statutory Receiver; Set Off; Interest Bearing Certificate.**—A party defending an action on a note by the superintendent of banks as statutory receiver, was not entitled to set off against the demand sued on, the amount due from the insolvent bank to him represented by an interest bearing certificate, since, having stipulated for interest, his claim was subject to the preferred claim of depositors who had not stipulated for interest, and such procedure would allow a non preferred creditor to secure his non preferred debt, which would otherwise diminish the fund from which preferred creditors would be paid. (§ 250, Constitution 1901.)

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Assumpsit by A. E. Walker as superintendent of banks, against J. B. McCrary Company on a note, to which defendant offered to set off an interest-bearing certificate issued by the insolvent bank. Judgment for defendant and plaintiffs appeals. Reversed and remanded.

PAGE, McMILLAN & BROOKS, for appellant. W. O. MULKY, for appellee.

McCLELLAN, J.—The question propounded by this appeal is this: Whether, in an action by the statutory receiver of an insolvent bank, on a note payable to the bank, the defendant may set off against the demand sued on the amount due from the bank to the defendant represented by an interest-bearing certificate issued by the bank to the defendant. The response to the inquiry depends upon the construction and the effect to be given section 250 of the Constitution. That section is as follows: "Holders of bank notes, and depositors who have not stipulated for interest, shall, for such notes and deposits, be entitled in case of insolvency, to preference of payment over all other creditors: Provided, this section shall apply to all banks, whether incorporated or not."

In *Taylor v. Hutchinson*, 145 Ala. 202, 208, 40 South. 108, it was affirmed with obvious correctness that the manifest intent of the section was to create a preference in favor of depositors who had not stipulated for interest; thus relegating to a secondary class all other creditors of the insolvent bank. And in further sound declaration of the section's clear effect it was remarked, by way of argument, that the provisions of the section had "doubtless become a basis of credit of banks and to which depositors have looked as their protection in case of insolvency." The status upon which the provisions of the section visit their conclusive, self-executing effect (*Taylor v. Hutchinson, supra*) are established by the relation assumed before insolvency by the bank, on the one hand, and, on the other hand, the depositors not stipulating for interest, or the holder of the bank's note or the depositors who have stipulated for interest. The section creates two classes of creditors and ordains a preference in respect of the payment of the demands of one class over the other class. The preferred class is constituted of those who have not stipulated for interest. Those of this class have established for them a superior, a first right to have their demands against the insolvent institution satisfied out of its assets. Those of the class who have stipulated for interest are denied the right to have their demand which is predicated of an interest-bearing deposit paid in whole or in part until the demands of the creditors of the preferred class are satisfied. The effect of the organic law enters into, affects, and governs as to rights as well as otherwise every deposit in a bank in this state, whether the deposit is accompanied by a stipulation for interest or not. Its operation is

effective when the deposit is made; and, if the character of the deposit, with respect to interest, is not changed in good faith by the bank and the depositor before insolvency intervenes, the status remains fixed and controls absolutely the subsequent administration of the insolvent estate. It necessarily results from this effect of the provisions of the Constitution that (except in the very rare cases where the depositor stipulating for interest at the same moment becomes a debtor of the bank through a loan by the bank to the depositor so stipulating) the depositor stipulating for interest agrees that, in the event of insolvency, the satisfaction of his demand will await the full satisfaction of the demands of the depositors who have not stipulated for interest. Like considerations lead to the further result, remarked in *Taylor v. Hutchinson*, that depositors who, not contracting for interest on their deposits, have, when making their deposits, rightfully looked to the provisions of the section "as their protection in case of insolvency." In these circumstances of established contractual rights and interrelated obligations, can the borrower be allowed to discharge, in whole or in part, his indebtedness to the bank with the amount of his interest-bearing deposit, without infracting the rule of preference established by the Constitution and thus elemental of the contracts made by the depositors of both classes? If the indebtedness to the defendant, represented by the certificate of interest-bearing deposit, may be set off against the demand sued on, then the statutory receiver in administering the trust would be well within his rights and duties if he and the borrower, who was also a depositor stipulating for interest, by consent effected the same result, namely, the payment of the borrower's indebtedness with the demand of the borrower against the bank created by the interest-bearing deposit; and if the statutory receiver and the debtor of the bank could so agree, it is clear that on a settlement of the statutory receiver's accounts he could not be justly otherwise held to an account with respect to the items involved and thus mutually adjusted. In our opinion such a process and result would violate the rule of preference established by the Constitution, by permitting a non-preferred demand to be used to discharge a demand that if paid in money would afford funds with which to discharge the demands of preferred creditors; or, to state it otherwise, the result would be to allow a non-preferred creditor to collect or to secure the partial or total payment of his nonpreferred debt by

setting off his debt to the insolvent bank, which, if he paid it as he engaged, would enhance the fund from which creditors preferred over him are entitled, under the Constitution, to be paid. The inevitable effect of section 250 of the Constitution is to forbid translation of a creditor from the nonpreferred into the preferred class; to inhibit the payment of a nonpreferred demand by setting it off against a demand that would, if paid or collected, furnish means or contribute to a fund to satisfy creditors of the preferred class.

The appellee has cited the case of *State v. Brobston,* 94 Ga. 95, 21 S. E. 146, 47 Am. St. Rep. 138, as opposed to the conclusion above announced. That decision is without application. There the state of Georgia sought, by intervention, to assert its superior lien on the assets of the insolvent bank; the court holding that the right or lien of the state was effective upon the assets only, and that the assets of the insolvent institution comprehended the balances between the bank and its creditors, thus affirming the right of set-off usually recognized and enforced between persons having mutual demands. But under section 250 of our Constitution the inquiry is one of contractually accepted preference or nonpreference among creditors of the institution in the event of its insolvency, and not, as in the Georgia case, as inquiry determinable by the ascertainment of what are the assets of an insolvent bank.

The trial court gave effect in its rulings on the pleadings to a different conclusion. The judgment is, hence, grounded in error. It is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. SAYRE, J., not sitting.