# Harris *v.* Walker, Supt.

### Mandamus.

### (Decided February 1, 1917.   74 South. 40.)

1. **Constitutional Law;  Amendments;  Adoption.**—Const. 1901, Sec. 284,
which supplanted Const. 1875, Art 17,. Sec 1, provides that, if it shall appear
that a majority of the qualified voters who voted at election upon proposed
amendments voted in favor of the same, such amendments shall become part
of the Constitution.   Code 1907, Sec. 1, declarative of the general rule, pro-
vides that singular and plural forms are interchangeable.   A number of
amendments were submitted at the same election.   Held, that a constitu-
tional amendment was adopted where a majority of the votes cast concern-
ing it were in favor of adoption, though such majority did not constitute a
majority of the highest number of votes cast on other amendments.'

2. **Constitutional Law;  Amendments;  Adoption.**—As Const. 1901, Sec.
285, providing for the form of the ballot for the submission of constitu-
tional amendments, and that no amendment shall be adopted unless it re-
ceives the affirmative vote of a majority of all the qualified voters who vote
at such election, must be construed with reference to the prior section, a
constitutional amendment submitted at a general election which receives a
majority of the votes cast on the question of its adoption is adopted, though
such majority did not constitute a majority of the votes cast at the general
election.  '

3. **Constitutional Law;  Amendment;  Action  by  Legislature.**—Where
there is nothing to indicate that legislative action is necessary to render

effective a constitutional amendment, such action is unnecessary, and hence an amendment eliminating a section from the Constitution goes into effect without legislative action.

4. **Banks and Banking; Constitutional Law; Insolvency; Claims of Creditors; Obligations of Contracts.**—Where after the insolvency of a bank Const. 1901, Sec. 250, giving holders of bank notes and depositors who had not stipulated for interest preference in payment, was eliminated, the limination does not affect the rights of the depositors, for constitutional provisions and statutes always operate prospectively, and not retrospectively, unless the words used clearly indicate that a retrospective operation was intended, and to construe the elimination as having a retrospective effect would violate Const. U. S. Art. 1, Sec. 10, prohibiting the passage by a state of any law impairing the obligation of contracts.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Petition by T. H. Harris against A. E. Walker, as Superintendent of Banks, for mandamus to said Walker requiring him in the payment of the dividend to pay petitioner a dividend equal in proportion to that paid depositors who had not stipulated for interest. Decree for respondent, and complainant appeals. Affirmed.

The petition avers that Harris is a resident citizen of Birmingham, and that the Jefferson County Bank is a corporation organized for the purpose of carrying on a banking business, and that it continued in such business to January 28, 1916, when said Walker, as superintendent of banks, took charge of the affairs of said bank for the purpose of liquidation as provided by law, and still has charge of said bank for said purpose; that on August 17, 1915, petitioner deposited in said bank $34,846, under a contract with said bank stipulating that said deposit should bear interest from date at the rate of 4 per cent. per annum, in evidence of which a certificate of deposit was issued by said bank to petitioner; that since taking over the affairs of said bank said superintendent has declared and paid a dividend of 80 per cent. in favor of depositors of said bank who had not stipulated for interest, and that said Walker, as such superintendent, at the time of the filing of said petition was preparing and proceeding to declare and have issued and paid to the depositors of said bank who had not stipulated for interest an additional dividend of 20 per cent.; petitioner has made demand upon said superintendent that in declaring and issuing and paying said dividend of 20 per cent. there be included depositors who had stipulated for interest, and that such superintendent issue and pay dividends to peti-

[Harris v. Walker, Supt.]

tioner upon his said deposit; that said superintendent had at the time of the filing of this petition.in his custody sufficient moneys to declare a dividend of 20 per cent. upon the deposits of those who had not stipulated for interest, and that such moneys then in the hand of such superintendent as part of the assets of said bank was sufficient to pay a 10 per cent. dividend upon the claims of all depositors and creditors of said bank, including those depositors who had and those who had not stipulated for interest, and that, if such dividend of 10 per cent. be declared in favor of plaintiff, he would be entitled to receive the sum of $3,484.61; that the assets of the bank are not sufficient to pay in full all of the depositors who have and those who have not stipulated for interest, together with the other creditors of said bank; the said Walker, as such superintendent, has failed and refused to pay petitioner such dividend; that the passage of the amendment of the Constitution of Alabama striking therefrom section 250, art. 13, entitled "the petitioner to the relief prayed."

Defendant answered the petition and set up: First, that the amendment to the Constitution striking therefrom section 250 was not adopted by the vote of a majority of the qualified voters voting in the election upon the amendment thereat submitted, the total vote on amendment No. 1, the educational amendment, being 116,884, while the total vote on amendment No. 3, the bank deposit amendment, was only 93,865, of which 50,383 were cast for the amendment, and 43,492 against it; second, that said amendment has not been rendered effective by any act of the Legislature so declaring; third, that the ballot issued for the amendment election did not clearly indicate the substance or subject-matter of the proposed amendment; fourth, that at the amendment election the affairs of the Jefferson County Bank were in process of liquidation by the respondent, Walker, in accordance with the then existing law, he having taken charge thereof on January 28, 1916; that the rights of depositors who had not stipulated for interest had already attached, and the amendment in question was not retrospective in its operation, and did not change the relative status and rights of the previous depositors, nor of other creditors as to banks already in process of liquidation. Demurrers were overruled to the answer, and the allegations of facts in both petition and answer being confessed as true on final hearing, the trial court denied relief and dismissed the petition.

C. C. NESMITH for appellant. COLEMAN & COLEMAN for appellee.

SOMERVILLE, J.— (1) Under section 1 of article 17 of the Constitution of 1875, providing for the submission to the people at a general election of amendments to the Constitution, to be proposed by act of the Legislature, such amendments became valid, as parts of the Constitution, if it appeared that "a majority of all the qualified electors of the state *who voted at said election* voted in favor of the proposed amendments."

In *May v. Mayor & Aldermen of Birmingham,* 123 Ala. 306, 318, 26 South. 537, it was held, with respect to the italicized clause as above noted that it plainly required for the passage of an amendment the affirmative vote of a majority of those who voted at the election in general.

Section 284 of the Constitution of 1901 has clearly substituted a different requirement in this regard, and declares that: "If it shall appear that a majority of the qualified voters who voted at said election upon the proposed amendments voted in favor of same, such amendments shall be valid to all intents and purposes as parts of this Constitution."

The only question of doubt suggested by this language is whether the vote for each individual amendment, where two or more are submitted at the same election, must be a majority of the highest number voting upon any amendment, or merely a majority of those voting upon the single amendment in question.

We can discover no reason either of subjective relevancy or of objective policy which would render probable a purpose on the part of the makers of the Constitution to so concatenate a number of separate and unrelated amendments as to make the highest vote on any amendment the basis for the adoption of all of the others; nor does the language of the ordinance require, by any reasonable intendment deducible therefrom, such a narrow construction. It is usual in the construction of statutes, a contrary intention not appearing, to hold that singlar and plural forms are interchangeable (36 Cyc. 1123, 1), and section 1 of our Code so provides.

We think that "the qualified voters who voted at said election upon the proposed amendments" means, with respect to each of the proposed amendments, a majority of those voting on that particular amendment. We hold, therefore, that the proposed

[*Harris v. Walker, Supt.*]

amendment eliminating section 250 from the Constitution was duly adopted by the number of votes required by section 284 of that instrument.

(2) Section 285, after providing for the form of the ballot and the mode of expressing the voter's choice in such elections, declares that "no amendment shall be adopted unless it receives the affirmative vote of a majority of all the qualified electors who vote at such election." This provision must, of course, be interpreted in connection with its predecessor, section 284, and the words "such election" can only mean the election on any proposed amendment. And hence the language quoted from section 285 does not mean that an amendment must be adopted by a majority of those voting for candidates at a general election, when the two elections occur at the same time. Counsel for appellate do not suggest such a meaning, and the context obviously refutes it.

(3) When a constitutional amendment is adopted in the manner specified by the Constitution, and there is nothing to indicate that the matter is referred to the Legislature for further action, it will be construed as self-executing, and effective from the date of its adoption. This very section now eliminated (section 250) was itself held to be self-executing, and its revocation is even more obviously so.—*Taylor v. Hutchinson*, 145 Ala. 202, 40 South. 108. The ballot used at the amendment election fully complied with the requirements of section 285 of the Constitution, and that objection is without merit.

(4) It remains only to consider whether this amendment, as adopted, affects the rights of the depositors of a bank already insolvent, so that in the distribution of its assets those depositors who stipulated for interest are placed upon an equality with those who did not; in short, does it destroy the preference accorded by the eliminated section to depositors of the latter class over all other creditors of an insolvent bank? "Constitutional provisions, like statutes, always operate prospectively, and not retrospectively, unless the words used or the objects to be accomplished clearly indicate that a retrospective operation was intended."— 8 Cyc. 745, 746, and cases cited.

This rule of construction clearly forbids the intendment of retrospective operation in the adoption of this amendment. But, even if such intendment could be imputed, such a construction

would be plainly violative of section 10 of article 1 of the federal Constitution, which inhibits the passage by a state of any law impairing the obligations of contracts. This is made unmistakably clear by what we have recently said in discussing the operation of the repealed provision and the relative rights of depositors and creditors thereunder. To quote: "The section creates two classes of creditors and ordains a preference in respect of the payment of the demands of one class over the other class. The preferred class is constituted of those who have not stipulated for interest. Those of this class have established for them a superior, a first right to have their demands against the insolvent institution satisfied out of its assets. Those of the class who have stipulated for interest are denied the right to have their demand which is predicated of an interest-bearing deposit paid in whole or in part until the demands of the creditors of the preferred class are satisfied. The effect of the organic law enters into, affects, and governs as to rights as well as otherwise every deposit in a bank in this State, whether the deposit is accompanied by a stipulation for interest or not. Its operation is effective when the deposit is made; and, if the character of the deposit, with respect to interest, is not changed in good faith by the bank and the depositor before insolvency intervenes, the status remains fixed and controls absolutely the subsequent administration of the insolvent estate. It necessarily results from this effect of the provisions of the Constitution that (except in the very rare cases where the depositor stipulating for interest at the same moment becomes a debtor of the bank through a loan by the bank to the depositor so stipulating) the depositor stipulating for interest agrees that, in the event of insolvency, the satisfaction of his demand will await the full satisfaction of the demands of the depositors who have not stipulated for interest. Like considerations lead to the further result, remarked in *Taylor v. Hutchinson*, that depositors who, not contracting for interest on their deposits, have, when making their deposits, rightfully looked to the provisions of the section 'as their protection in case of insolvency.' "—*Walker, Supt., etc., v. McCrary*, 167 Ala. 638, 73 South. 342.

Since the right of these depositors of this insolvent bank who did not stipulate for interest to be satisfied in full before other creditors are paid arises out of their contract with the bank as controlled by the constitutional guaranty then in force, it is in

[Atlantic C. L. Ry. Co. v. Enterprise Cotton Co.]

the fullest sense the "obligation of a contract" which cannot be impaired by either the Constitution or a statute of this state.

It results that the petitioner was not entitled to the relief prayed for, and the petition was properly dismissed. Let the judgment be affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.