D. H. MYERS, *as Assignee of the Estate of John Higinbotham*, v. THE BOARD OF EDUCATION OF THE CITY OF CLAY CENTER.

1. BANK—*Insolvency—Deposit of School Funds—Preferred Claim.* The treasurer of a board of education, without authority, placed the school funds in a bank of which he was manager, and the owner of which had knowledge of the character of the funds. They were wrongfully used in the business of the bank, and for the payment of indebtedness against it. Afterward, the owner of the bank became insolvent, and made an assignment of his property for the benefit of creditors. The assets which came into the hands of the assignee consisted of real property, securities, and cash; but the amount of the school

money wrongfully converted, and which was impressed with a trust, was largely in excess of the cash on hand at the time of the assignment. The trust fund could not be clearly traced to any particular asset in the hands of the assignee, but it was shown to have gone into and been used for the benefit of the estate. *Held*, That the trust fund became a charge upon the entire assets with which it was mingled, and that the board of education has a preferred right to the assets over general creditors to the extent of the fund converted.

2. COLLATERAL SECURITY—*Equitable Lien*. The taking of collateral security from the treasurer of the board for the payment of the money misappropriated will not prevent it from insisting upon its equitable lien against the assets of the estate.

3. TRUST FUND, *Action to Recover*. The board of education never presented its claim to the assignee for allowance, nor was the written notice prescribed by statute ever given to the board of the time and place for the presentation of demands against the estate. *Held*, That the failure of the board to present its demand to the assignee will not prevent it from maintaining an action for the recovery of the trust fund.

### *Error from Clay District Court.*

ACTION brought by the *Board of Education of the City of Clay Center* against *D. H. Myers*, as the assignee of the estate of John Higinbotham, to recover $3,265.71, alleged to be a trust fund in the hands of the assignee, to which it was entitled. Upon the evidence submitted, the district court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT.

"1. For several years prior to the 8th day June, 1889, John Higinbotham was doing business as a private banker at Clay Center, Kansas, and carrying on a private bank under the name of the Clay County Bank, and H. G. Higinbotham was cashier of said bank and manager of said John Higinbotham's banking business, having full supervision and control of the same.

"2. On the 8th day of June, 1889, and for 10 years prior thereto, said H. G. Higinbotham had been treasurer of the board of education of the city of Clay Center, the plaintiff herein, and as such treasurer had received and disbursed large sums of money belonging to said board of education, and during all the time he was such treasurer he was also cashier and manager of said private bank of John Higinbotham.

"3. During all the time said H. G. Higinbotham was acting as such treasurer he had an account on the books of said Clay County Bank as H. G. Higinbothan, treasurer, and all moneys which came into his hands as treasurer of the board of education of the city of Clay Center were deposited by him in said bank and credited to said account, and mingled with the general funds of the bank, and orders drawn on him as such treasurer were paid out of the general funds of the bank and charged to said account. No other money except such as came into his hands as such treasurer was credited to said account, nor were any payments, except such as were made on orders drawn on him as such treasurer, charged to said account.

"4. During the time he was treasurer of the board of education of the city of Clay Center, and prior to the 8th day of June, 1889, the said H. G. Higinbotham, as such treasurer, had deposited in said bank to the credit of said account $3,265.71 more than had been paid out and charged to said account, which said sum, $3.265.71, had been mingled with the general funds of said bank and used in the ordinary course of the private banking business of said John Higinbotham, in the payment of the debts of the bank.

"5. The last money coming into the hands of said H. G. Higinbotham as such treasurer, which was so deposited in said bank and credited to said account, was deposited on the 3d day of April, 1889; on the 8th day of May, 1889, the total amount of cash in said bank was $544.15, and no more; after said 8th day of May, 1889, there was paid out of the funds of said bank, on orders drawn on said H. G. Higinbotham and charged to said account, $1,236.02; and on the 8th day of June, 1889, when the business was closed, the total amount of cash in said bank was $1,535.57.

"6. Said John Higinbotham knew that said H. G. Higinbotham was depositing the money coming into his hands as such treasurer in said bank, and that such money was being used in the same manner as other funds of said bank in the ordinary course of its business.

"7. The board of education of the city of Clay Center never authorized said H. G. Higinbotham to deposit the funds coming into his hands as its treasurer in the Clay County Bank, and never consented thereto; but some of the members of said board of education had actual knowledge that said funds were so deposited for some time before the 8th day of June, 1889.

"8. On the 8th day of June, 1889, said John Higinbotham made an assignment of all his property and assets of every kind, including said banking business, to D. H. Myers, for the benefit of his creditors, and on that day said Clay County Bank was closed, and thereafter no further business was done therein.

"9. Said D. H. Myers, who is the defendant in this action, took possession, as temporary assignee, of all the property and assets of every kind belonging to said John Higinbotham, and being afterward duly elected permanent assignee of said John Higinbotham, and duly qualified as such assignee, he retained possession of said property and assets, and still has the same in his possession, or so much thereof as have not been paid out in the due course of the administration of said estate; and there was at the time this suit was commenced, in his hands as such assignee, belonging to said estate so assigned to him, real estate of the value of $7,000 or more.

"10. At the time said assignment was made, there was in said bank cash to the amount of $1,535.57 and no more, and said assignee has never received from the assets of said estate so assigned to him any cash other than said sum, except such as was derived from the sale of some of the assets of said estate, and all the cash so coming into his hands, including said sum of $1,535.57, had, prior to the commencement of this action, been used in paying a dividend on claims allowed against said estate, and other legitimate charges against the same.

"11. On the 12th day of June, 1889, said H. G. Higinbotham resigned the office of treasurer of the board of education of the city of Clay Center, and at the time there was in his hands as such treasurer the sum of $3,265.71, which said sum has been by him deposited in the Clay County Bank, as heretofore stated in the fourth finding of fact, and which said sum he then, and has ever since, failed to pay over to his successor in office, or to any one authorized by said board to receive the same, except $210 thereof, and of said sum there is still unpaid $3,055.71.

"12. At the time said H. G. Higinbotham resigned said office of treasurer, there was not, and for a long time prior thereto there had not been, in existence any valid bond executed by him for the faithful performance of his duties as such treasurer.

"13. On the 14th day of June, 1889, said H. G. Higinbotham, in order to secure to said board of education payment

of said sum of $3,265.71, executed to said board, pursuant to a demand made by it upon said H. G. Higinbotham, to secure the same, a chattel mortgage on certain personal property, and also a mortgage on his homestead, consisting of certain lots in the city of Clay Center, which lots were subject to two prior mortgages of $1,200 and $120; afterwards said personal property so mortgaged was sold under said mortgage, and the proceeds arising therefrom, amounting to $210, were applied by said board in part payment of said sum of $3,265.71; and said real-estate mortgage is still in full force, and no action has been taken by said board to realize anything thereon.

"14. In said real-estate mortgage, H. G. Higinbotham and Lillie G. Higinbotham, his wife, were the parties of the first part, and the board of education of the city of Clay Center was the party of the second part, and in said mortgage the following conditions were written, to wit:

"'*Provided, Nevertheless,* And these presents are upon the following conditions, expressly made, to wit: That, whereas, the said H. G. Higinbotham is justly indebted to the said party of the second part in the sum of thirty-five hundred and sixty-five and seventy-one one-hundredths dollars ($3,265.71), the same being the balance of the funds and moneys of the said party of the second part now remaining in the hands of said H. G. Higinbotham, deposited with him as treasurer of the said party of the second part; and whereas, said H. G. Higinbotham has resigned said office, and upon legal demand made upon him for said funds and moneys by his duly-qualified successor in said office, said H. G. Higinbotham has failed and refused to pay over and deliver said funds and moneys to his successor in office; and whereas, a claim for said funds and moneys, made in behalf of the treasurer of the said party of the second part, against the estate of John Higinbotham and D. H. Myers, assignee thereof, is pending, and may be paid, in whole or in part by said assignee: now, if the said first parties shall, on or before the 14th day of June, 1890, pay, or cause to be paid, to the qualified treasurer of said party of the second part the funds and sums of moneys aforesaid, with interest thereon from the date hereof at 10 per cent. per annum, or such part thereof as shall not previous to said 14th day of June, 1890, be paid by the assignee of John Higinbotham's estate, in that case this deed shall become void, and the premises hereby conveyed shall be released, at the proper cost of the said parties of the first part or their legal representatives. And it is hereby agreed and understood, that the execution and delivery of this instrument by said parties of the first part to said party of the second part does not, and shall not, in any way lessen the obligation of said H. G. Higinbotham respecting the funds and moneys of said second party heretofore delivered to him as treasurer as aforesaid; and this instrument is intended as security for the payment of said funds and moneys as aforesaid, in addition and in no way affecting the rights of the said second party under any bond or bonds which may have been heretofore given to said party of the second part, or under any of the laws or the state of Kansas, on and after June 14, 1890.'

"The conditions above recited are followed by a provision

that in case the parties of the first part shall fail to pay said funds and sums of money, or the interest thereon, or the taxes or insurance on the mortgaged premises, then the party of the second part might proceed to foreclose and mortgage and sell the mortgaged premises, and apply the proceeds of such sale to the payment of said sums of money.

"15. Said D. H. Myers, as assignee of said John Higinbotham, gave notice by advertisement, published as required by law, of the time and place when he would hear and allow claims against said estate, and also notified by mail H. G. Higinbotham, treasurer of the board of education of Clay Center, as one of the creditors of said John Higinbotham, of the time and place when he would hear and allow claims, but no notice of said time and place of hearing and allowing claims was given to the board of education of the city of Clay Center, or any officer or member thereof, except as above stated, and at the time said notice by mail was given to H. G. Higinbotham, he was not treasurer of said board of education.

"16. Neither said H. G. Higinbotham, nor anyone for him, nor anyone acting for the board of education of the city of Clay Center, presented any claim or demand for said sum of $3,265.71 to said assignee, at the time and place fixed by him in said notices for hearing and allowing by said assignee as a claim by said estate, and said sum of $3,265.71 was not allowed by said assignee as a claim against said estate.

"17. On the 15 day of May, 1891, and before the commencement of this action, demand was made by the plaintiff upon said D. H. Myers, as assignee of John Higinbotham, for the payment of said sum of $3,265.71, as a trust fund in his hands as such assignee, belonging to the plaintiff, and payment thereof was refused; and no other demand was ever made by plaintiff or in its behalf on said D. H. Myers as such assignee for the payment of said money as a trust fund or otherwise.

"18. When said demand was made by plaintiff, on the 15th day of May, 1891, said D. H. Myers did not have in his hands, as such assignee, any of the money which was in the Clay County Bank on the 8th day of June, 1889, when said assignment was made, and which he then received as such assignee."

"CONCLUSIONS OF LAW.

"1. That money of the board of education of the city of Clay Center, deposited by H. G. Higinbotham, while treas-

urer of said board, in the private bank of John Higinbotham, was impressed with the character of trust funds, and was held as a trust fund by said John Higinbotham.

"2. That the assets of John Higinbotham, in the hands of D. H. Myers as his assignee, are subject to a charge of $3,- 055.71, as a trust in favor of the board of education of the city of Clay Center.

"3. That the plaintiff is entitled to a decree for the payment to it by D. H. Myers, assignee of John Higinbotham, of the sum of $3,055.71, out of the assets of said John Higinbotham in his hands as such assignee."

Judgment was accordingly given, and to reverse the same the assignee brings this proceeding in error.

*Harkness & Godard,* for plaintiff in error:

The principal error of which we complain is the conclusion of law found by the court, that the amount due the defendant is a charge upon the assets in the hands of plaintiff in error. With the general proposition that a trust fund can be followed and reclaimed so long as it can be traced and identified, we have no dispute; but we claim that the evidence does not sufficiently trace the property into the hands of the assignee, but, on the contrary, shows that it did not reach his hands. We suppose it will be presumed that this was the money of the defendant in error, and that the banker had drawn out all of his own money before touching the trust fund. *Knatchbull v. Hallett,* 13 Ch. Div. 696; *Pennell v. Deffell,* 4 De G. M. & G. 372.

The decisions of the courts show that the rule permitting the recovery of specific money or its proceeds held in such capacity as to constitute it a trust fund has been extended out of all proportion to its original use, and until some courts have declared that it is time to call a halt. The early English decisions have been very carefully reviewed and commented upon in the case of *Knatchbull v. Hallett,* 13 Ch. Div. 696. This case and that of *National Bank v. Insurance Co.,* 104 U. S. 54, seem to be considered as the leading cases upon this question, and they are each quoted upon both sides of the prop-

osition as to whether or not, where a trust fund has been traced into the hands of a bank, the amount of such fund can be made a charge upon the entire estate of the bank in the hands of the assignee thereof, without tracing the fund to any particular portion of the assets, or in cases where the circumstances were such that the rule of law applicable would be the same.   In both of these cases, however, the money sought to be recovered, or a greater sum of money with which the trust fund had been mixed, was transferred to the assignee, and the question of making the amount of the trust fund which had been converted a charge upon the entire estate in the hands of the assignee is not discussed in either of these cases or the case of *Peak v. Ellicott,* 30 Kas. 156.  See, also, *National Bank v. Dowd,* 39 Fed. Rep. 684; *National Bank v. Dowd,* 38 id. 172; *Trust and Sav. Bank v. National Bank,* 15 id. 858; *Steamboat Co. v. Locke,* 73 Me. 370; *Appeal of Hopkins, Exr.,* 9 Atl. Rep. 867.

To make the amount used in the payment of the debts of the assignor prior to the assignment a charge upon the estate in the hands of the assignee would most certainly be an injustice to the general creditors. *McLeod v. Evans,* 66 Wis. 401; *People v. City Bank of Rochester,* 96 N. Y. 32.  See, also, *Cavin v. Gleason,* 105 N. Y. 256; *Bank v. Weems,* 69 Tex. 489; *Englar v. Offutt,* 70 Md. 78; *Brown v. King,* 17 N. Y. Sup. Ct. 678; Pom. Eq. Jur., §§ 1049–1058.

On the 14th day of June, 1889, H. G. Higinbotham, as treasurer, settled with the board of education accordingly, giving security by real-estate mortgage, the board granting him an extension of one year in which to pay the amount due, in further consideration for which he agreed to pay 10 per cent. interest per annum upon the amount agreed upon in the settlement.   Now we contend that the board of education, as *cestui que trust,* might elect to claim the deposit as its own, (if the same could be followed into the assigned estate and identified under the rules heretofore quoted,) or it could pursue its remedy against the trustee, Mr. Higinbotham, but could not do both. Morse, Banking, § 590e;

Perry, Trusts, § 843; *Barker v. Barker*, 14 Wis. 131; *Stoller v. Coates*, 88 Mo. 514; 6 Am. & Eng. Encyc. of Law, 250; *Bailey v. Hervey*, 135 Mass. 172; *Farwell v. Myers*, 59 Mich. 179; *Nield v. Burton*, 49 id. 53; *Buckley v. Morgan*, 46 Conn. 393.

Our final contention is, that under our statute the assignee had exclusive original jurisdiction to pass upon and determine the status of the claim in controversy. The board could have presented its claim for special allowance. *Sams v. Binns*, 33 Kas. 199.

The assignee acts judicially in passing on claims, and his adjudication is a judgment *in rem.* *The State v. Insurance Co.*, 32 Kas. 655; Freem. Judgm., § 531; *Eppright v. Kaufman*, 1 S. W. Rep. 736.

The board knew, or should have known, of the time and place of allowing claims, and cannot urge want of notice. *Carter v. Lee*, 47 N. W. Rep. (Iowa) 104.

*C. C. Coleman, F. L. Williams,* and *B. B. Tuttle,* for defendant in error:

1. It is contended that defendant cannot recover, because it has never presented its claim to the assignee for allowance. The simplest form of a trust of this kind would be in a case where the trust fund could be identified; that is, the identical fund which was deposited as a trust could be picked out from the other assets and returned to the claimant. Such a claimant is not a creditor, in the usual meaning of the word, "one to whom a debt or obligation is due," "one who voluntarily trusts and gives credit to another for a sum of money or other property, upon bond, bill, note, book, or simple contract." No person standing in the relation of *cestui que trust* to the assigned estate is a creditor within this meaning of the word; and if this is the sense in which the word is used in the statute, then this plaintiff was not bound to present its demand to the assignee. *National Bank v. Ellicott*, 31 Kas. 175; 2 Story, Eq. Jur., § 964.

2. It is also contended that the defendant in error, having

taken security from H. G. Higinbotham, it cannot now reclaim the trust fund from the assignee. The authorities cited on this point are somewhat meager, and do not warrant the conclusions of plaintiff in error. Perry, Trusts, § 843. See, also, Morse, Banking, § 590*e*.

The case of *Stoller v. Coates*, 88 Mo. 514, so far as it touches this branch of the case, goes only to the point that a *cestui que trust* who has had his demand allowed by an assignee and received dividends thereon as other creditors cannot afterward resort to his equitable remedy. All of these authorities, it would seem, go to the extent of saying that when a *cestui que trust* has two ways, either of which he may lawfully travel to secure that which was his, he may take either, but he cannot pursue one to its end and go back and pursue the other; or, in other words, a *cestui que trust* cannot have his money twice made good to him — which seems both reasonable and equitable.

3. This brings us to the main question in this case, namely: Did the court err in decreeing the amount due the defendant in error to be a charge upon the assets in the hands of the plaintiff in error? According to the theory of the plaintiff in error and some of the authorities he cites, a *cestui que trust* must trace his funds into some specific property before he can claim its repayment in equity. This theory of the law is, to some extent, supported by most of the authorities cited by plaintiff in error; but their authority is entirely swept away by the fact that they are in direct conflict with the opinion of the supreme court of the United States, as expressed in *Insurance Co. v. Bank*, 104 U. S. 61, and of this court, in *Peak v. Ellicott*, 30 Kas. 156, hereinafter referred to, as well as other courts of highest authority, to which the attention of the court will be called.

We contend the rule to be, when money held as a trust fund has been mingled in the hands of a trustee with other moneys belonging to such trustee, losing its identity, for it has no "ear marks," that it is no longer necessary to identify the specific property, but it is sufficient, to enable the *cestui*

*que trust* to recover his trust fund as a claim prior to general creditors, if he only traces the fund into the property of the trustee; and when it is shown that a trustee has mingled trust funds with his own and used the mingled funds in conducting his general business affairs, the trust fund is sufficiently traced into the property of the trustee.

In support of the proposition that it is sufficient to enable the *cestui que trust* to recover his trust fund as a claim prior to general creditors if he only traces the trust fund into the property of the trustee, we cite the following authorities: *Plow Co. v. Lamp*, 80 Iowa, 722; *Independent District v. King*, 80 Iowa, 497; *National Bank v. Insurance Co.*, 104 U. S. 54; *McLeod v. Evans*, 66 Wis. 401; *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 id. 514; *Smith v. Combs*, 24 Atl. Rep. 9; *National Bank v. Hummel*, 14 Colo. 259; *People v. Bank*, 96 N. Y. 32; *Peak v. Ellicott*, 30 Kas. 156.

"When it is shown that a trustee has mingled trust funds with his own, and used the mingled funds in conducting his general business affairs, the trust funds are sufficiently traced into the property of the trustee." In support of this proposition, we cite: *Independent District v. King*, 80 Iowa, 498; *Plow Co. v. Lamp*, 80 id. 722; *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 id. 514; *McLeod v. Evans*, 66 Wis. 401; *Peak v. Ellicott*, 30 Kas. 156.

A close analysis of the decision of the supreme court in *Peak v. Ellicott* shows that the court, in effect, decided that, when it is shown that trust funds have been used by the trustee in the conduct of his general business affairs, as in the case at bar, it is a sufficient tracing of the trust funds into the property of the unfaithful trustee to entitle the *cestui que trust* to priority, as against general creditors, in the satisfaction of his claim out of the estate of the unfaithful trustee, either in his own hands or the hands of his assignee.

The opinion of the court was delivered by

JOHNSTON, J.: There is no doubt or question about the character of the moneys, amounting to $3,055.71, sought to

be recovered in this action. They were school funds, collected and held for specific public purposes, and the bank, its owners, and manager, all knew of the trust character of the funds, and hence there is no excuse for their misappropriation. The treasurer of the board of education, who placed these trust funds in the bank, was its manager, and without authority from the board of education he mingled them with the funds of the bank, and used them in paying the creditors of that institution. At one time, subsequent to the last deposit of school money, the total amount of cash on hand in the bank was $544.15, and subsequent to that time $1,236.08 was drawn from the funds of the bank upon the order of the board of education. When the bank closed, the whole amount of cash on hand was $1,535.57. It is said that no portion of this sum was the identical money received from the board of education, and that neither the money nor any specific property into which it had been converted can be clearly traced to the hands of the assignee. Under these circumstance, has the board of education a preferred right over general creditors to the assets in the hands of the assignee? It is not denied that the school funds were impressed with a trust, and, if susceptible of identity, could be followed and reclaimed from the assignee. It is also admitted that, if they could be traced into any other specific property, the *cestui que trust* might claim such property or a lien upon it; but it is insisted that, unless the trust funds can be traced and identified, the *cestui que trust* is to be treated as a simple creditor, and not entitled to an equitable preference in the distribution of the assets of the estate. The view of the plaintiff in error is not without support; and many of the older cases, while holding that a trust fund wrongfully converted into another species of property of whatever form will be held liable to the rights of the beneficial owner in its new form, if its identity can possibly be traced, still adopt the old doctrine, stated by Judge Story, as follows: "The right to follow a trust fund ceases when the means of ascertainment fail, which, of course, is the case when the subject-matter is turned into money and mixed and

confounded in a general mass of property of the same description." (Story, Eq. Jur., § 259.) The modern doctrine of equity, and the one more in consonance with justice, is, that the confusion of trust property so wrongfully converted does not destroy the equity entirely, but that, when the funds are traced into the assets of the unfaithful trustee, or one who has knowledge of the character of the funds, they become a charge upon the entire assets with which they are mingled. This principle was fully recognized, and the question in the present case was substantially decided, in *Peak v. Ellicott,* 30 Kas. 156. In that case it was said:

"As the money was a trust fund, and never belonged to the bank, its creditors will not be injured if it is turned over by the assignee to its owner. Even if the trust fund has been mixed with other funds of the bank, this cannot prevent the plaintiff from following and reclaiming the fund; because, if a trust fund is mixed with other funds, the person equitably entitled thereto may follow it, and has a charge on the whole fund for the amount due."

It would seem to be immaterial whether the property with which the trust funds were mingled was moneys or whether it was bills, notes, securities, lands, or other assets. The bank which assigned in this case appears to have been engaged in a general business, and its assets consisted of moneys, securities, and lands; and, as the estate was augmented by the conversion of the trust funds, no reason is seen, under the equitable principle which has been mentioned, why they should not become a charge upon the entire estate. In *McLeod v. Evans,* 66 Wis. 401, an unfaithful trustee made an assignment, and among the assets there was a small amount of cash, and it was not shown that it was a part of the proceeds of the draft or trust fund. The question was whether the owner of the trust fund stood upon the same ground as the general creditors of the trustee, or whether he had a paramount right to be first paid out of the assets of the estate. It was found that the proceeds of the trust property were used by the trustee either to pay off his debts or to increase his assets, and it was

held to be unnecessary to trace the trust fund into any specific property in order to enforce the trust, and that, if it could be traced into the estate of the defaulting agent or trustee, that was sufficient. It was further decided, that whether the trust funds were used to increase the assets or to pay off the debts, in either case it would be for the benefit of the estate, and, having been so used, it was held that a trust attached to the entire estate which came into the hands of the assignee. The court in that case cites *Peak v. Ellicott*, supra, and expressly approves the doctrine of that case.

In *Independent District v. King*, 80 Iowa, 497, the treasurer of a school district, as in this case, wrongfully deposited the funds of the district in a bank, which knew the character of the funds. Subsequently the bank failed, and made an assignment for the benefit of its creditors. It was there insisted that, as none of the identical money deposited went into the possession of the assignee, no trust could be enforced against the estate of the assignor, to the prejudice of other general creditors. Speaking of the bankers, the court said that they

"Were fully advised as to the material facts, and therefore could acquire no title to the deposit adverse to the plaintiff. As to them, the money constituted a trust fund, which they had no right to convert to their own use; and the fact tha they mingled it with other money, so that the identity of that deposited was lost, would not destroy the trust character of the deposits, nor prevent the enforcement of the trust against property to which they had contributed. To hold otherwise would be to ratify a willful violation of law, at the expense of an innocent party, and thus perpetrate a wrong. The defendant (who was the assignee) acquired no property rights as against plaintiff which the Cadwells (the bankers) could not have enforced, and he had no special interest which requires protection. The same is true of the general creditors. They are entitled to only so much of the estate of the insolvents as remains after liens paramount to their claims and other preferred charges are satisfied."

In *Plow Works v. Lamp*, 80 Iowa, 722, the supreme court of Iowa considered the same question, in a case where the

trust funds had been used, as in the present case, by the trustee for the payment of debts. The trustee having become insolvent and made an assignment, the assignee contended that the estate in his hands was not chargeable with the trust funds, but that the owner of the funds should be placed on an equal footing with general creditors, and only receive a *pro rata* payment out of the estate. The court said:

"The money was used by the Globe company in its business, and in payment of its debts. It became liable to the plaintiff to replace the trust funds with other money in its possession, or with money realized out of other property. Of course, the Globe company and its stockholders can urge no equity nor reason against the enforcement of these rules. Can its creditors? We think not, for these reasons: The money was wrongfully mingled, as it were, with the assets of the company. The money did not belong to the Globe company. The creditors, if permitted to enforce their claims as against the trust, would secure the payment of their claims out of trust moneys. If they are not permitted to do this, they are simply denied the remedy of enforcing their claims against property acquired by the use of trust money. They are deprived of no right, for the property acquired by the trust money became subject to the trust, and, therefore, could not have been subject to the claims."

In *Harrison v. Smith*, 83 Mo. 210, where trust money was wrongfully mingled with the funds of a bank which became insolvent and subsequently made an assignment, it was held that, although the trust money was not clearly traceable to any particular asset of the bank, the fact that it went into and swelled the volume of its assets gave the beneficial owner an equitable right to have his demand first paid out of the assets of the estate and before distribution was made to the general creditors. The same court in a later case held, that while it might

"Be impossible to follow the fund in its diverted uses, it is always possible to make it a charge upon the estate or assets to the increase or benefit of which it has been appropriated. The general assets of the bank having received the benefit of the unlawful conversion, there is nothing inequitable in charg-

ing them with the amount of the converted fund as a preferred demand." (*Stoller v. Coates*, 88 Mo. 514.)

This principle of equity was approved by the supreme court of the United States in *National Bank v. Insurance Co.*, 104 U. S. 54, where it was held that—

"If a man mixes trust funds with his, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in bank, and to the debt thereby created, as to every other description of property."

See, also, *Knatchbull v. Hallett*, 13 Ch. Div. 696; *People v. Bank*, 96 N. Y. 32; *National Bank v. Hummel*, 14 Colo. 259; *Smith v. Combs*, 24 Atl. Rep. 9; *County v. Bank*, 52 Fed. Rep. 59. These authorities are in line with *Peak v. Ellicott*, supra, and fully sustain the ruling of the district court in this case making the trust fund a charge on the assets in the hands of the assignee.

The court below held that the fact that the board of education sought and obtained some security from H. G. Higinbotham, who had been the treasurer of the board, for the payment of the money which he had misappropriated, did not prevent the board from following and recovering the trust fund. In this we see no error. As treasurer of the board, he was personally liable for the wrongful conversion of the money intrusted to him. The collateral security for the payment of the money was taken soon after the assignment was made, and before it was known whether the trust money could be reclaimed; and, probably, it was not then known whether there were sufficient assets against which the trust might be enforced. The taking of collateral security for the whole of the trust fund which the board was seeking to find, or for that part which they might ultimately fail to recover, does not appear to us to be inconsistent with the remedy sought in this action, and should not prevent it from insisting upon its equitable lien against the assets of the estate. The rights of no creditor of the bank have beeen prejudiced

by the taking of the security, and it does not appear that any proceeding to enforce the same has been begun.

Another point made by plaintiff in error is, that the board, having failed to present its claim to the assignee for special allowance, is precluded from availing itself of its equitable lien against the assets of the estate. This contention is based on the provisions of § 21 of the assignment act. It provides that.the assignee shall give certain notice to the creditors of the estate of the time for the presentation and allowance of demands; and further, that all creditors who, after being notified, fail to attend and present the nature and amount of their demands, shall be precluded from any benefit in the estate. This point cannot be sustained. Under the view which we have taken, the board of education can hardly be regarded as a "creditor," within the meaning of the statute. The funds sought to be recovered. were never the property of the bank. The title and beneficiary interest in the same remained in the board of education, so that the relation of debtor and creditor never in fact existed between the bank and the board. ( *National Bank v. Hummel,* supra.) But even if the board was to be treated as a creditor under this statute, (which we need not decide now,) it is not concluded by its failure to present a claim for the trust money to the assignee. No written notice as required by § 21 was given to the board of education, or any officer or member thereof, of the time when claims would be heard and allowed by the assignee. A notice was sent to H. G. Higinbotham, but at that time he was not the treasurer of the board. If the board of education is to be regarded as an ordinary creditor, it should have been notified; and, as the notice was not given, there can be no claim that it is estopped to avail itself of the remedy which it is now seeking.

The judgment of the district court will be affirmed.

All the Justices concurring.