This action was brought by the county of Grand Forks against the defendant, as receiver of the Peoples State Bank of Grand Forks, to impress the assets of the bank with a trust in favor of the county. In the trial court the plaintiff had judgment for the relief demanded to the extent of $2,277.89, the same being the amount of the cash assets at the date of the closing of the bank. The defendant appeals from the judgment, assigning certain errors upon the judgment roll. The findings of fact may be briefly summarized as follows: During the years 1920 and 1921, the county treasurer of Grand Forks county made certain deposits in the Peoples State Bank, the funds being mingled with the other funds and assets of the bank. A portion of the money so deposited was withdrawn, so that at the close of business on February 17th, when the bank was permanently closed by the banking *Page 318 
board, there was a balance in favor of the plaintiff of $9,765.11. The cash assets of the bank at that time amounted to $2,277.89. At the meeting of the board of county commissioners in January, 1919, a resolution was passed accepting, among others, the bid of the Peoples State Bank of Grand Forks for the deposit of county funds, and the bank was formally designated as a depositary. The bank did not furnish bond, the commissioners not requiring it. Later the Bank of North Dakota came into being and it was used as a depositary of county funds in lieu of the banks previously designated. After an initiated amendment to the Bank of North Dakota Act became effective, so that county treasurers were no longer absolutely required to use the Bank of North Dakota as a depositary (Laws of N. Dak., 1921, page 255), and in January, 1921, the county treasurer procured a bond to be executed by individual sureties in the sum of $30,000, payable to the treasurer, conditioned for the repayment by the Peoples State Bank of such moneys as he should from time to time deposit. This bond was not a statutory depository bond and was taken by the treasurer for his own protection. After the bank had been in the receiver's hands for some time, a claim for the rebate of taxes illegally exacted was adjusted between the bank and the county, whereby the bank received a credit of $3,435.69. Leaving a balance due from the bank to the county of $6,348.12. There was also credited on the preferred claim a proportionate share of $1,269.62 as a 20 per cent dividend upon the entire claim after allowance of the tax rebate.
There is a specific finding of fact that the assets of the bank were increased by the amount and to the extent of the moneys deposited by the county treasurer; also, a conclusion that the plaintiff is not barred or estopped from asserting its claim.
The questions presented and argued upon this appeal may, we think, be reduced to two: (1) Under the undisputed facts, was it proper to impress a trust on the cash assets of the bank in favor of the county? (2) If the first question be resolved in favor of the county, is it precluded from asserting its preference by reason of the negotiations between it and the bank, resulting in a settlement of the bank's claim for taxes illegally collected and the further receipt by the county of a cash dividend as a general creditor? Before taking up these questions, however, we are called upon to consider one contention which, if well *Page 319 
founded, would be controlling. There is some contention that the bank had been designated as a depositary and that, while acting as such, the money was lawfully deposited therein by the treasurer in circumstances that gave rise to the relationship of debtor and creditor, and that, since the county is no longer a preferred creditor in liquidating the affairs of an insolvent bank (Comp. Laws 1913, § 8007), the preference must fail. However, it is established by the findings that the bank never qualified as a legal depositary, pursuant to the provisions of § 3317 of the Compiled Laws for 1913, and, hence, the ordinary rule that illegal deposits of public funds result in the relationship of trustee and cestui que trust applies. In this view, it is unnecessary to consider the effect of the Bank of North Dakota Act as a repeal of the previous depositary laws, particularly article 11, chapter 42 of the Compiled Laws for 1913, nor the effect of the initiated law adopted in November, 1920, as a revival of the depositary status as to banks which had been previously designated.
Turning now to the first of the appellant's main contentions, may the cash assets of a bank in the hands of a receiver, at the closing of the bank, be properly regarded as a trust fund belonging to the plaintiff? While there is a specific finding that the assets of the bank were increased by the amount and to the extent of the moneys deposited by the county treasurer, we are not concerned in this opinion with any attempt to fasten lien upon the assets of the bank for the entire deposit. The judgment is limited to the cash assets. If they were ever lower than at the time the bank was closed, such fact does not appear; but we are of the opinion that, in the absence of evidence, it should be presumed that they were never less than at the time of the closing; also, that it is incumbent on the defendant to offer evidence to the contrary. Hence, the single question is presented as to whether an illegal deposit of public funds in a bank having knowledge of the character of the deposit and the powers of the officer results in the creation of a trust relation which will continue so as to enable the cestui que trust to assert its right to the cash on hand at the time of the failure, such an amount having been continuously in the bank. The trust arises from the fact that the money belongs to the public and not to the officer; that he is authorized to deposit it only in public depositaries qualified as such, and that the unauthorized deposit does not divest the public title. *Page 320 
Mechem, Pub. Off. § 922; McHenry County v. Northern Trust Co.51 N.D. 646, 200 N.W. 888. The authorities universally support the trust in these circumstances. The only difficulty is in following the res where it has been mingled with the property of the trustee. Here, however, we think the controlling principle is both simple and well substantiated by authority. The principle is that the trustee can not assert a title of his own to trust property. In applying this principle to banks holding public funds in trust and not in the capacity of debtors, the conversion by the bank of the cash assets from time to time into the various forms of investment and their employment in the ordinary business of the bank, must be held to involve the cash to which it has title as owner, and not that which it holds in trust; for it is at all times precluded from asserting its ownership of the amount so held. From this it follows that the cestui may at any given time fasten the trust upon the cash assets available to the extent of the minimum on hand between the origin of the trust relation and the times of its enforcement. This principle has never, in our opinion, been successfully controverted since Sir George Jessel, Master of the Rolls, gave utterance to his remarkably simple, yet compelling, illustration. Said he (Re Hallett, L.R. 13 Ch. Div. 696, at page 711), "Supposing the trust money was 1,000 sovereigns, and the trustee put them into a bag, and by mistake, or accident, or otherwise, dropped a sovereign of his own into the bag. Could anybody suppose that a judge in equity would find any difficulty in saying that the cestui que trust has a right to take 1,000 sovereigns out of that bag? I do not like to call it a charge of 1,000 sovereigns on the 1,001 sovereigns, but that is the effect of it. I have no doubt of it. It would make no difference if, instead of the one sovereign, it was another 1,000 sovereigns; but if instead of putting it into his bag, or after putting it into his bag, he carries the bag to his bankers, what then? According to law the bankers are his debtors for the total amount; but if you lend the trust money to a third person, you can follow it. If in the case supposed the trustee had lent the 1,000 pounds to a man without security, you could follow the debt, and take it from the debtor. If he lent it on a promissory note, you could take the promissory note; or the bond, if it were a bond. If, instead of lending the whole amount in one sum simply, he had added a sovereign, or had added 500 pounds of his own to the 1,000 pounds, the only difference *Page 321 
is this, that instead of taking the bond or the promissory note, the cestui que trust would have a charge for the amount of the trust money on the bond or promissory note."
That this reasoning has met with general approval and has been followed to its logical result in cases analogous to the instant case is demonstrated in a note to § 1049, 3 Pom. Eq. Jur. 4th ed. at pages 2388 et seq. See also the cases collected in a note in the Lawyers Reports Annotated, 5 L.R.A.(N.S.) 886; and see 3 R.C.L. pp. 554, 555. Among the many cases on the subject, the following will be found to be well considered and instructive: Woodhouse v. Crandall, 197 Ill. 104, 58 L.R.A. 385, 64 N.E. 292; Page County v. Rose, 130 Iowa, 296, 5 L.R.A.(N.S.) 886, 8 Ann. Cas. 114, 106 N.W. 744; Meyers v. Board of Education, 51 Kan. 87, 37 Am. St. Rep. 263, 32 P. 658; Yellowstone County v. First Trust Sav. Bank, 46 Mont. 439, 128 P. 596.
With reference to the second question presented, little need be said. No facts are disclosed in the findings which would warrant a legal conclusion that the plaintiff is estopped. It appears that the plaintiff had conceded that the taxes which had been collected were illegal and that it allowed the claim for reimbursement as a credit. This could not have possibly prejudiced the bank or its creditors. In accepting the dividend payment, the plaintiff received only that consideration which was accorded to the general creditors of the bank, while it was entitled to a preference. Neither the defendant nor its general creditors were prejudiced by this. The elements of estoppel are lacking.
It follows from what has been said that the judgment is right and must be affirmed. It is so ordered.
CHRISTIANSON, Ch. J., and JOHNSON, NUESSLE, and BURKE, JJ., concur. *Page 322