STATE ex rel. RANKIN, Plaintiff, *v.* BENTON STATE BANK, Defendant.

CHOUTEAU COUNTY, Appellant, *v.* PHELAN, Receiver, Respondent.

(No. 6,224.)

(Submitted January 7, 1928. Decided January 18, 1928.)

[263 Pac. 689.]

*Banks and Banking—Insolvency—Deposit of County Funds— Preferred Creditors—Trust ex Maleficio—Evidence—Insufficiency.*

Trust *Ex Maleficio* Arises, When.
1. A trust *ex maleficio* arises where the person sought to be held as trustee has been guilty of fraud or misconduct or has committed an illegal act relating to the subject matter of the alleged trust.

Banks and Banking—Insolvency—Deposits of Public Funds—Preference Claims—When Bank Trustee *ex Maleficio.*
2. Before it may be said that a bank which accepts deposits of public funds made illegally by their custodian and thereafter becomes insolvent is a trustee *ex maleficio* of such funds for the public body to which they belong, it must be made to appear that the bank had notice or knowledge of the illegality of the deposits.

Same—Insolvency—Deposits of County Funds—Evidence—Insufficiency to Establish Trust Relationship Between Bank and County to Entitle Latter to Preference Claim.
3. Where a bank under the depository law had qualified to receive county funds to the amount of $325,000 but had received deposits only to the amount of $251,538 without knowledge or notice that the county treasurer in depositing that amount with it had done so in disregard of section 4767, Revised Codes, which required him to prorate the funds among all the banks in the county which had qualified as depositories, the county, upon subsequent insolvency of the bank, was not entitled to an order declaring it a preferred creditor to the amount of the excess between the sum which the treasurer should have deposited under a proper prorating and the sum actually deposited, on the theory that it was a trustee *ex maleficio* of the excess deposits; not having been an active participant in the wrongdoing of the treasurer and having received the

3. Deposit of public funds as preferred claim against insolvent bank, see notes in 8 Ann. Cas. 116; Ann. Cas. 1916B, 1264; 5 L. R. A. (n. s.) 886; 16 L. R. A. (n. s.) 918; L. R. A. 1917A, 683; 36 A. L. R. 640; 51 A. L. R. 1336 See, also, 3 R. C. L. 555.

deposits without knowledge or notice that he was transgressing the law, its status as a general depository was not changed to that of a trustee.

[1]    Trusts, 39 Cyc., p. 169, n. 11.
[2]    Banks and Banking, 7 C. J., sec. 543, p. 749, n. 57.
[3]    Banks and Banking, 7 C. J., sec. 543, p. 749, n. 57.

*Appeal from District Court, Chouteau County; W. H. Meigs, Judge.*

ACTION by Chouteau County against the Benton State Bank and John T. Phelan, receiver, to establish a preferential claim against the assets of the defendant Benton State Bank as an insolvent bank. From an order denying its claim for preference the county appeals. Affirmed.

*Mr. W. E. Macdonald* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

Section 4767, Revised Codes 1921, is the only authority under which the county treasurer could deposit the funds of Chouteau county. (*State* v. *Madison State Bank,* 77 Mont. 498, 251 Pac. 548; *Yellowstone County* v. *First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596.) His duty in making the deposit was purely ministerial. (29 Cyc. 1442; *Smith* v. *Zimmer,* 45 Mont. 282, 125 Pac. 420; *Hedges* v. *County Commrs.,* 4 Mont. 280, 1 Pac. 748.) In respect to the public money and the deposit thereof, he possessed only such authority as is conferred upon him expressly by statute, together with such as may be necessarily implied from the express grant. (*Ainsworth* v. *McKay,* 55 Mont. 270, 175 Pac. 887; *Sullivan* v. *Big Horn County,* 66 Mont. 45, 212 Pac. 1105; *State ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144; *Edwards* v. *Lewis & Clark County,* 53 Mont. 359, 165 Pac. 297.) It is apparent, therefore, that the excess deposit in the Benton State Bank was absolutely illegal. The effect of such deposit is thus characterized by our supreme court in the case of *Yellowstone County* v. *First Trust & Sav. Bank,* supra. The court there held that so far as concerns the illegal deposit the county was

entitled to a preference claim. The above case was approved in *State* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130; *State* v. *Madison State Bank,* 68 Mont. 342, 218 Pac. 652; *Pethybridge* v. *First State Bank,* 75 Mont. 173, 243 Pac. 569. And see *City of Missoula* v. *Dick,* 76 Mont. 502, 248 Pac. 193; *State* v. *Madison State Bank,* 77 Mont. 498, 251 Pac. 548, and the case is cited and quoted with approval in *Pinal County* v. *Hammons* (Ariz.), 243 Pac. 919; *Pocatello* v. *Fargo,* 41 Idaho, 432, 242 Pac. 297, 311. The rule announced in the *Yellowstone County Case* has never, so far as we can ascertain, been changed or disapproved.

By the agreed statement some $12,000 in cash was in the bank when it closed. It is presumed that this amount is what remains of the illegal deposit and from such cash the claim of petitioner is payable. Thus all the elements of a preference claim exist. (*Hawaiian Pineapple Co.* v. *Brown,* 69 Mont. 140, 220 Pac. 1114; *California Pkg. Co.* v. *McClintock,* 75 Mont. 72, 241 Pac. 1077; *State* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130; *McDonald* v. *American Bank & Trust Co.,* 79 Mont. 233, 255 Pac. 733.)

A theory which will probably be advanced by the receiver in defense is that the county treasurer having made only a general claim, and the county having received dividends thereon, it is now estopped to claim a preference. This theory is untenable. (See *Raynor* v. *Scandinavian-American Bank,* 122 Wash. 150, 57 A. L. R. 716, 210 Pac. 499; *Wuerpel* v. *Commercial etc. Bank,* 238 Fed. 269; *Wallace* v. *Stone,* 107 Mich. 190, 65 N. W. 113; *First National Bank* v. *C. Bunting & Co.,* 7 Idaho, 27, 59 Pac. 929.)

In plain, unambiguous terms 4767 seems to require an apportionment. That was a duty devolving upon the treasurer. Failure to so apportion was not only negligence per se (*Osterholm* v. *Boston etc. Min. Co.,* 40 Mont. 508, 107 Pac. 499; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Melville* v. *Butte-Balaklava Co.,* 47 Mont. 1, 130 Pac. 441; *Jackson* v. *Lomas,* 60 Mont. 8, 198 Pac. 434; *Western Casualty Co.* v. *Board of Commrs.,* 60 Okl. 140, 159

Pac. 655; *Board of Commrs.* v. *Dunlop,* 17 Okl. 53, 87 Pac.
590; *State* v. *McCloud,* 64 Okl. 126, 166 Pac. 1065; *State* v.
*Smith,* 110 Okl. 94, 236 Pac. 410), but also a felony. (Re-
vised Codes 1921, sec. 11318.)

*Messrs. Miller & Wiley,* for Respondent, submitted a brief;
*Mr. C. W. Wiley* argued the cause orally.

There being no statute prohibiting the action of the treas-
urer in depositing the funds of the county as set forth in the
agreed statement of facts, as was the condition of the law in
the *Yellowstone County Case* (46 Mont. 439, 128 Pac. 596);
as no time was designated as to when apportionment should be
made; as no correct apportionment could be made until the
payment of the indebtedness then due and ordered to be paid;
as the money deposited in the Benton State Bank was much
less in amount than the indemnity secured; as there was no
law giving a preference or lien to the county on its general
deposits—we respectfully submit that the decision of the dis-
trict court dismissing the action was correct and should be
affirmed.

MR. JUSTICE STARK delivered the opinion of the court.

Chouteau county instituted this action for the purpose of
establishing a preference claim against the assets of the Benton
State Bank, an insolvent banking corporation now in the posses-
sion and under the control of John T. Phelan, as receiver.
The case was submitted to the court upon an agreed statement
of facts and resulted in an order denying the preference, from
which the county has appealed.

Section 4767, Revised Codes 1921, which was in force at the
times in question, made it the duty of the county treasurer
to deposit all public moneys in his possession or under his
control in solvent banks of the county designated by the board
of county commissioners, and required him to take from such
banks bonds or securities prescribed and approved by the
board of county commissioners, sufficient and necessary to in-
sure their safety and payment, and further provided: "When

more than one such bank is available in any county, such deposits shall be distributed ratably among all such banks qualifying therefor, substantially in proportion to the paid-in capital of each such bank willing to, receive such deposits under the terms of this Act, and it shall be the duty of the county treasurer to prorate all such deposits among all the banks in his county qualified to receive same as in this Act provided, to the end that an equitable distribution of such deposits be maintained.'' By section 11318, Revised Codes 1921, a failure to observe the requirements of the above statute was made a criminal offense.

Between March 7, 1921, and March 5, 1923, George A. Boynton was the duly elected, qualified and acting county treasurer of Chouteau county and as such was the custodian of its public funds. During this period there were some fifteen banks in operation in Chouteau county, in all of which, except two, the treasurer had deposited county funds to the full extent for which they had been qualified.

The Benton State Bank had a capital stock of $125,000 and had thus been designated and qualified to receive deposits of public funds of the county up to $325,000. On December 23, 1922, the county treasurer had on hand $452,833.52 of public funds, which were on deposit in the various depositories of the county; of this amount $251,538.75 was in the Benton State Bank on general deposit, subject to check, this bank having been selected by the treasurer as the medium through which he transacted the general financial business of the county. The bulk of these funds was derived from taxes which had been collected during the latter part of November, and the first part of the month of December of said year. Prior to the twenty-third day of December the treasurer had not made a complete apportionment of these moneys amongst the banks of the county qualified to receive deposits. Such an apportionment would have required him to have deposited some additional funds in the Stockmen's National Bank of Fort Benton and the First National Bank of Geraldine, and to have correspondingly decreased the amount on deposit in the Benton State Bank.

On December 23, 1922, the Benton State Bank became insolvent, closed its doors and has since remained closed. At that time it had on hand in cash the sum of $11,579.91.

On April 18, 1923, the then county treasurer presented a claim to the receiver of the Benton State Bank for the full amount of the county's deposit therein, and the same was allowed by him as a general claim against the assets of the bank. There has been paid on this claim the sum of $57,936.27, leaving a balance due thereon of $193,902.48. Subsequent to the presentation and allowance of the above-mentioned claim, the county instituted this proceeding to have a portion of said balance declared to be entitled to a preference over the general claims against the assets of the bank in the hands of the receiver.

Counsel for the county in their brief have made a computation showing the amount of money which the treasurer should have had on deposit in each of the banks in Chouteau county qualified to receive deposits of county funds on December 23, 1922, if the same had been apportioned amongst them in proportion to their paid-in capital stock. According to this computation the amount on deposit in the Benton State Bank was $129,925.51 in excess of the amount which would have been deposited therein if the treasurer had made a correct apportionment amongst the banks of the county qualified to receive deposits. Deducting from this amount the sum of $57,636.27, which has been paid on the county's claim, leaves a balance of $72,293.24 for which the preference claim is asserted, on the ground that the excess deposit in the Benton State Bank was illegal. It is argued that, this excess deposit being illegal, the county never consented thereto, and hence did not become a general creditor of the bank for the amount thereof, but that the bank held this excess deposit as a trustee *ex maleficio* for its use and benefit.

Counsel rely on the case of *Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596, to sustain their position, but it does not do so. The statute under consideration in that case (sec. 3003, Rev. Codes 1907) charged

the county treasurer with the safekeeping of all county funds, but authorized him to make general deposits of funds upon requiring from the depository an indemnity bond in double the amount deposited, with sureties to be approved by the county commissioners and filed with the clerk of the county. The defendant bank had furnished a bond in the sum of $25,000 which had been duly approved and filed and was therefore sufficient to authorize the treasurer to make a general deposit in the sum of $12,500 therein. The bank became insolvent and at the time of its suspension the county treasurer had on deposit therein the sum of $33,000. This court held that to the extent of $12,500 the county funds deposited in the bank by the treasurer constituted a general deposit and as to that amount the county was only entitled to share with the general creditors in the distribution of the bank's assets. In reference to the balance of the deposit the court said: "The deposit of $20,500 excess, without security, was wrongful and unlawful. The county did not consent thereto, never parted with its title to such funds, and the treasurer and the bank officers knew of these facts, being chargeable with knowledge of the law. The bank was an active participant in the wrong, and the result follows, as of course, that as to such excess the bank held it as a trustee *ex maleficio,* for the use and benefit of the county."

The basis of this holding was that the bank, being cognizant
[1] of the facts and chargeable with knowledge of the law, was an active participant in the wrong committed. That is a condition precedent to the creation of a trust *ex maleficio,* since it arises on account of fraud or misconduct of the trustee or by virtue of some illegal act on his part. (*Rogers* v. *Richards,* 67 Kan. 706, 74 Pac. 255; *Barry* v. *Hill,* 166 Pa. 344, 31 Atl. 126.)

There are numerous cases holding that the unauthorized
[2] or illegal deposit of public funds in a bank which subsequently becomes insolvent creates a trust relationship in such funds between the bank and the public body to which they belong, but such holdings are in each instance based on the fact

that the bank had knowledge or notice of the illegality of the deposits, as had the bank in *Yellowstone County* v. *First Trust & Savings Bank,* supra. (*Board of Commrs. of Crawford County* v. *Strawn* (C. C. A.), 157 Fed. 49, 15 L. R. A. (n. s.) 1100; *Allen* v. *United States* (C. C. A.), 285 Fed. 678; *Re Fidelity State Bank,* 35 Idaho, 797, 31 A. L. R. 781, 209 Pac. 449; *Independent District* v. *King,* 80 Iowa, 497, 45 N. W. 908; *Myers* v. *Board of Education,* 51 Kan. 87, 37 Am. St. Rep. 263, 32 Pac. 658; *Board of Fire & Water Commrs.* v. *Wilkinson,* 119 Mich. 655, 44 L. R. A. 493, 78 N. W. 893; *State* v. *Bank of Commerce,* 54 Neb. 725, 75 N. W. 28; *William R. Compton Co.* v. *Farmers' Trust Co.* (Mo. App.), 279 S. W. 746; *Grand Forks County* v. *Baird,* 54 N. D. 315, 209 N. W. 782; 3 R. C. L., p. 555, sec. 182.) The principle announced in the foregoing authorities finds support in the case of *Montana-Wyoming Association of Credit Men* v. *Commercial National Bank of Miles City,* 80 Mont. 174, 259 Pac. 1060.

The agreed statement does not bring the Benton State Bank [3] within the rule laid down in the cases above cited. It had furnished bonds which had been duly approved and filed, entitling the county treasurer to deposit with it $325,000 of the public funds of the county, and it had a right to receive deposits up to that amount. So far as this record discloses, it had no knowledge or notice that the county treasurer was not complying strictly with the requirements of the statute in making a ratable distribution of the public money amongst the banks of the county which were qualified to receive the same. It had a right to rely upon the presumption that the treasurer was regularly performing his official duty in that respect. (Sec. 10606, Rev. Codes 1921.) It was not chargeable with notice of the fact that the treasurer had deposited with it a greater amount than he should have, taking into consideration the paid-in capital stock of the other banks in the county which were willing to receive deposits of public funds and had qualified to receive the same.

If, under the facts agreed upon, the county treasurer was guilty of a wrongful act by not making a distribution of the county funds under his control in accordance with the statute prior to December 23 (which question we are not called upon to decide), so that his excess deposit with the Benton State Bank was illegal, the bank, not having knowledge of the facts, could not be held to have been a participant in the wrong so as to change its status from that of a general depository of the funds to that of a trustee *ex maleficio*.

We think the order of the lower court denying the preference claimed was properly made, and the same is affirmed.

*Affirmed.*

MR. CHIEF· JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.

Rehearing denied February 3, 1928.