330

■■■■■■■■■■■■■■

The People of the State of Illinois ex rel. Oscar Nelson, Complainant, v. Peoples State Bank of Maywood et al., Defendants.

Appeal of Petitioner, Village of Maywood, Appellant. Anthony J. Busscher, Receiver of Peoples State Bank of Maywood, Appellee.

Gen. No. 35,413.

Opinion filed May 4, 1932.

JACOB E. DITTUS, for appellant; EDMUND D. ADCOCK, of counsel.

ROY MASSENA, for appellee; DONALD N. SCHAFFER, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

In a dissolution proceeding instituted by the Auditor of Public Accounts, a receiver was appointed to administer the affairs of the Peoples State Bank of Maywood. The Village of Maywood then had on deposit in its general banking account the sum of $52,026.93 and the further sum of $11,659.64, in the so-called Folan Collector and Water Department Accounts. The village sought by petition to obtain a preference as to both accounts in excess of $30,000, which was covered by depositary bonds, as fixed by authority of the village trustees. The court allowed the preference as to the Folan Collector and Water Department Accounts on the ground that these were special deposits, but denied the petition as to the excess in the general banking account. By this appeal the village seeks to reverse the court's decree as to the general account and the receiver has filed cross errors as to that portion of the decree giving preference to the village on the Folan Collector and Water Department Accounts.

By concession, the determination of the litigated issues depends largely on the language and construction of the village ordinances. Section 13, chapter 7, of these ordinances designates various depositaries, including the Peoples State Bank of Maywood, for the deposit of funds received by the village treasurer and provides that he is "hereby directed and required to deposit all such moneys and funds belonging to said Village . . . in said banks, and to maintain such deposits . . . substantially equal, or as nearly equal as practicable." Section 14 (a) provides that each of said banks, before receiving deposits of said money or funds is "required to execute and file with the Village Clerk, a bond, with such sureties as the Board of Trustees of said Village shall direct and approve, sufficient and conditioned to save the said Village from any loss." By section 14 (e) the village treasurer is further "required not to deposit, or have deposited, with

either of said banks, at any time, moneys or funds belonging to said Village in excess of the penal sum of such bond'' then on file. Other provisions of the ordinance authorize the president and board of trustees to increase the penal sum in any depositary bond and to require new bonds whenever required.

With reference to the preference claimed as to funds on deposit in the general banking account, the controlling question is whether the deposit of these funds in excess of $30,000 was illegal, as having been made in violation of subsection 14 (e) of the village ordinances, thus constituting the bank who received them a trustee *ex maleficio*. Our attention is directed to the seeming conflict between section 13, which required the treasurer to deposit all funds in the designated banks, and section 14 (e) which required him not to deposit in any bank funds in excess of the depositary bonds then on file. Counsel are in accord, however, that the several provisions of the ordinance must be construed as a whole. Giving effect to this rule of construction, it is apparent that the two-fold purpose of this ordinance is to require the treasurer to deposit funds belonging to the village in designated banks and to safeguard such funds, by requiring ample security. With this intendment clearly discernible from the language of the ordinance, it seems reasonably clear that subsection (e) and other portions of section 14 are merely limitations upon the provisions of section 13 of the ordinance. This requires the construction, as we view it, that while the treasurer is directed to deposit village funds in the banks designated, yet she is limited in such direction by section 14 and subsections thereof to amounts not in excess of bonds then on file. From the language employed in the ordinance, and in light of the fact that it relates to public officers and was obviously intended to afford protection to citizens in safeguarding public funds, we regard the provisions

of section 14 (e) as mandatory and not directory. *French v. Edwards,* 80 U. S. 506; *People v. Marshall,* 262 Ill. App. 128, 25 Ruling Case Law 766-67. Being mandatory, the provisions of the ordinance must be followed or the acts done will be invalid.

It is suggested by the receiver, however, that the stipulated facts fail to disclose actual knowledge on the part of the bank of the limitation provided by subsection 14 (e) when it received funds from the treasurer in excess of the depositary bonds. Actual knowledge is not necessary to render the excess deposits illegal. This ordinance, adopted pursuant to legislative authority (Cahill's St. ch. 24, ¶ 100; section 109, Cities and Villages Act, Smith-Hurd's Revised Statutes 1929) has the same force and effect within the corporate limits of the municipality as a law passed by the legislature (*Hope v. City of Alton,* 214 Ill. 102), and is binding upon persons within the jurisdiction of the municipality in which the ordinance is in force. Under this rule, the receiver cannot rely upon the ignorance of the bank as to provisions of subsection 14 (e) of the ordinance, and being chargeable with knowledge of the contents of that section, the bank must be held to have received the excess deposits wrongfully. The receiver relies on *State v. Benton State Bank,* 81 Mont. 322, 263 Pac. 689, as holding that actual knowledge is required. The Montana statute then in force required the county treasurer to deposit public moneys in solvent banks of the county designated by the board of commissioners, and required him to take from such banks bonds or security prescribed and approved by the commissioners, sufficient to insure the safety and payment of all deposits. It provided further that when more than one bank was available in any county, such deposits should be distributed ratably among all banks qualifying therefor, substantially in proportion to the paid in capital of each such bank willing to re-

ceive deposits under the terms of the statute, and it was the duty of the county treasurer, under the provisions of the act, to prorate all deposits among banks in his county qualified to receive same, to the end that an equitable distribution of such deposits should be maintained. According to mathematical computation, the amount on deposit in the Benton State Bank was approximately $130,000 in excess of the amount which would have been deposited therein if the treasurer had made a correct apportionment. It was there argued that this excess deposit was illegal, and being illegal, the county never consented thereto and hence did not become a general creditor of the bank for the amount thereof, but that the bank held this excess deposit as a trustee *ex maleficio* for the use and benefit of the county. Counsel in that case relied on *Yellowstone County v. First Trust & Savings Bank,* 46 Mont. 439, to sustain their position, but the court refused to accede to the contention made, stating that the basis of the holding in the *Yellowstone County* case was that the bank, being cognizant of the facts and chargeable with knowledge of the law, was an active participant in the wrong committed, and held that the Benton State Bank had no knowledge or notice of the fact that the county treasurer was not complying strictly with the requirements of the statute in making a ratable distribution of the public money among the banks of the county which were qualified to receive the same. It is obvious, of course, that this is quite different from saying that in the instant case the bank was not chargeable with knowledge of the law.

The village by its brief asserts that there are no cases in this State upon the status of unlawful deposits of public moneys and we have been unable to find any. There are cases dealing with the prerogative right of the State to a preference in case of a lawful deposit, limiting that prerogative right to certain public bodies

and to certain types of public moneys and cases denying a preference where the deposits were admittedly lawful. However, none of these involve the proposition before us. But we find in other jurisdictions authority to sustain petitioner's view. In *Compton Co. v. Farmers' Trust Co.,* 220 Mo. App. 1081, a drainage district directed its treasurer to deposit funds aggregating some $6,600 in three designated banks. Contrary to the order of the board of supervisors, the treasurer of the district deposited the entire amount in the Farmers Trust Company. When the latter bank became insolvent proceedings were had to secure a preference as to $4,000 deposited in excess of the amount authorized by the district. A Missouri statute contained a provision similar to section 109 of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 100, with reference to the deposit of public funds received by the treasurer of the drainage district. The court held that where public funds are deposited in violation of law and the depository has knowledge of the facts, title does not pass, and a trust *ex maleficio* results. In the course of its opinion the court pointed out that the defendant trust company could not lawfully receive the money; that it had knowledge of the fact as to the funds and was charged with knowledge of the terms of the statute; that in such case the relationship of debtor is not created between the depositor and the bank and for that reason the deposit remains the property of the depositor or the beneficial owner, and may be recovered from the bank or its receiver as against general creditors of the bank. The *Yellowstone County* case, *supra,* enunciates the same doctrine as the Missouri case. As we view it, there is no difference in principle between cases where facts of the illegality on the part of the treasurer rendered the deposit unlawful and the instant case where the violation of an ordinance of which the bank is presumed to have

knowledge invalidated the deposit of funds in excess of the amount covered by depository bonds. In both instances the bank becomes an active participant in the wrong, and the result follows, as of course, that as to any excess the bank should be held as a trustee *ex maleficio* for the use and benefit of the county or municipality.

It is urged on behalf of the receiver that the acquiescence of the village board in the excess deposits for a considerable period of time, estops the village from now claiming that the excess deposits were illegal. This position seems to be untenable for two reasons: First, the doctrine of estoppel is founded on the presumed ratification of the treasurer's wrongful act; therefore, unless the village in the first instance could authorize the treasurer to make a general deposit of its funds without security, it could not thereafter ratify his act in making such deposit; and, second, one who seeks to invoke the doctrine of estoppel must establish reliance upon the acts complained of and resultant prejudice. There is no showing here that the bank, its creditors or the receiver in any way relied upon the excess deposits or acquiescence of petitioner's board of trustees, both essential elements being thus lacking. It was so held in *Yellowstone County v. First Trust & Savings Bank, supra,* where the identical point was urged and overruled on the grounds hereinabove stated.

There remains for consideration the cross errors assigned by the receiver as to the allowance of the preferred claim in the Folan Collector and Water Department Accounts. The Folan Collector account represented moneys paid by persons against whose property special assessments had been levied. The water accounts represented payments by users of water in the village. These accounts aggregated $11,659.64. The moneys of both accounts were payable at any bank

in the Village of Maywood and were to be turned over and delivered by the bank to the village, or to be transferred to the village account. When the bank suspended business these moneys had not been transferred to the general account of the village or turned over to it. None of the moneys contained in these accounts was subject to check or withdrawal. It is conceded that there are but two kinds of bank accounts, general and special. It has recently been held in this State that where money or other thing is deposited in a bank with the understanding that the particular money or thing is to be returned to the depositor, the funds constitute special deposits. *People v. Farmers State & Savings Bank,* 338 Ill. 134. From the facts in evidence and a description of these accounts, it clearly appears that the bank was merely the agent of the village to receive the sums collected and to turn the money over or transfer the funds to the village account in the bank. Neither was done. Consequently, we must regard these funds as special deposits, to which the village was properly entitled to preference.

For the reasons stated, the decree of the circuit court will be reversed and remanded with directions to amend the decree allowing the Village of Maywood a preference as to the deposits in excess of $30,000, and in all other respects the decree will be affirmed.

*Reversed in part and remanded with directions.*

HEBEL, P. J., and WILSON, J., concur.